[No. B072262. Second Dist., Div. Three. Jan. 30. 1995.]

REGENCY OUTDOOR ADVERTISING, INC., Plaintiff and Respondent,
v.
CAROLINA LANES, INC., Defendant and Appellant;
CAROLINA ENTERPRISES, INC., Third Party Claimant and Appellant.

## COUNSEL

Victor W. Herman for Defendant and Appellant and for Third Party Claimant and Appellant.

Paone, Callahan, McHolm & Winton and Kathleen Carothers Paone for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Carolina Lanes, Inc. (Lanes or judgment debtor) appeals an order denying its motion to vacate and quash a writ of execution obtained by judgment creditor Regency Outdoor Advertising, Inc. (Regency or judgment creditor).

Carolina Enterprises, Inc. (Enterprises or sublessee) appeals an order denying its third party claim which asserted a sublessee interest in the subject real property.

The issues presented are whether: Lanes was entitled to have the writ of execution quashed on the ground Regency had not obtained the lessor's consent to a levy on Lanes's leasehold interest; and the trial court erred in denying Enterprises's third party claim.

We conclude the trial court properly denied Lanes's motion to quash the writ of execution. Lanes, as a lessee, lacked standing to assert the lessor's lack of consent to the levy. The statutory protection exists for the benefit of the lessor. (Code Civ. Proc., § 695.035.)[1]

As for Enterprises's third party claim, because Regency is not seeking to execute on Enterprises's sublessee interest in the subject real property, the third party claim properly was denied.

The order as to Lanes is affirmed. The order as to Enterprises is modified and as modified is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

The subject real property (the property) is located at 5601 W. Century Boulevard in Los Angeles and is owned by ASD, a California limited partnership (ASD), not a party to this appeal. Lanes and Enterprises are closely held corporations existing since the 1950's.

ASD's predecessor, one Cooper, leased the property under a long term master lease to Lanes. The master lease requires Lanes to obtain the lessor's

---

[1]All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

consent prior to assigning or subletting the premises.[2] In 1958, Lanes subleased the property to Enterprises pursuant to a written sublease with the lessor's consent. Enterprises operates a nude-dancing and adult-entertainment establishment at the property. Lanes is the master lessee under the master lease and the sublessor under the sublease.

In 1981, without obtaining ASD's consent, Lanes entered into a sublease giving Regency, a commercial billboard company, the right to erect a billboard on the property. ASD prevailed in an unlawful detainer action to remove Regency. Regency sued Lanes to recover the attorney fees and costs incurred by Regency as a defendant in the unlawful detainer action, as well as the attorney fees and costs incurred in prosecuting the attorney fees action. On May 24, 1988, Regency obtained judgment against Lanes in the principal sum of $261,472. As of July 23, 1992, there was approximately $346,141 in principal and accrued interest outstanding and uncollected on the judgment.

On June 12, 1992, Regency obtained a writ of execution against Lanes as the judgment debtor. The notice of levy indicated the property to be levied upon was Lanes's "leasehold interest in the following property: . . . 5601 W Century Blvd."

### 1. *Enterprises's sublessee third party claim.*

In response to the levy against Lanes's "leasehold interest" in the property, Enterprises filed a "Third Party Claim of Ownership or Right of Possession to Property." Enterprises maintained it had a sublessee and possessory interest in the premises and full ownership of all personal property at the location.[3]

Regency filed a petition to determine the validity of the third party claim. Regency contended "the 'property' in which [the sublessee] claims a possessory interest is *not* the same property interest levied upon by [Regency]. Therefore, [the sublessee's] purported third party claim is improper and should be denied."

On September 16, 1992, a hearing was held to determine the validity of the third party claim. The record reveals some confusion in this regard. The

---

[2]In this regard, the master lease between ASD and Lanes provides: "Lessee shall not assign, hypothecate, or pledge this Lease, or sublet the demised premises, or any portion thereof, *without the previous written consent of the Lessor first had and obtained.*" (Italics added.)

[3]A footnote in Enterprises's papers stated "all rent payments which may be owed by . . . Enterprises under the sublease have been prepaid by . . . Enterprises for the entire period of the lease."

trial court apparently ruled the sublessee's third party claim was valid. The September 16, 1992, minute order states: "The court determines third party claim is *valid*. No further determination is made." (Italics added.)

The trial court directed Regency's counsel to prepare a formal order. Said order, signed by the trial court and filed September 30, 1992, inconsistently states "the third party claim of Enterprises is *denied*; and . . . [t]he levy of execution by Regency may proceed[.]" (Italics added.)

*2. Lanes's judgment debtor motion to recall and quash writ of execution.*

On September 18, 1992, Lanes filed a motion to vacate or recall and quash the writ of execution Regency obtained on June 12, 1992, and to vacate the levy of execution. Lanes argued the leasehold interest could not be used to enforce the money judgment because Lanes did not have the right to sublet or assign the premises without the lessor's consent and the lessor had not consented to an assignment or sublease of the premises to satisfy the money judgment.

In opposition, Regency argued, inter alia, the lessor's consent was not required prior to the issuance of a writ or levy of execution. Further, the supporting declaration of Regency's attorney stated that in any event, ASD had been served with the notice of levy and had not made any objection to the levy of execution.

The matter was heard on October 8, 1992. At the hearing, Regency's counsel indicated, inter alia, Lanes had threatened to sue ASD for interference with contract "if ASD dares to consent to th[e] levy of execution or the execution sale[.]" The matter was taken under submission. On October 13, 1992, the trial court denied Lanes's motion to vacate and quash, ruling "section 695.035 is not applicable because the levy is on [a] sub-*lessor* interest."

On November 6, 1992, Lanes appealed the denial of its motion to vacate and quash the writ of execution, and Enterprises appealed the denial of its third party claim.[4]

CONTENTIONS

Enterprises contends its third party claim is valid.

---

[4]A judgment determining the validity of a third party claim is appealable (§§ 720.390, 720.420), as is an order denying a motion to recall and quash a writ of execution. (*Evans* v. *Superior Court* (1942) 20 Cal.2d 186, 188 [124 P.2d 820]; 8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 156, p. 147.)

Lanes contends the trial court erred in refusing to recall and quash the writ of execution.

## DISCUSSION

1. *Trial court properly denied Enterprises's sublessee third party claim.*

   a. *General principles.*

■ The Enforcement of Judgments Law (§ 680.010 et seq.) includes procedures for determining the claims of third persons, i.e., those other than the judgment debtor and creditor. (§ 720.010 et seq.) The purpose of third party claims is to give a quick and effectual remedy to third parties whose property has been levied upon by mistake. (*Rubin* v. *Barasch* (1969) 275 Cal.App.2d 835, 836 [80 Cal.Rptr. 337].)

The third party claims procedure is available to a person claiming a superior ownership or possessory right in real property that is subjected to attachment or execution to satisfy a money obligation. The third party claims procedure also may be utilized to assert superior claims of ownership or right to possession where personal property has been levied upon. (§ 720.110, subds. (a), (b), and Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 720.110, pp. 530-531.)

In ruling on a third party claim, the trial court renders "judgment determining the validity of the third-party claim and may order the disposition of the property or its proceeds in accordance with the respective interests of the parties." (§ 720.390.)

Alternatives to the third party procedures include a quiet title action or one for declaratory relief. (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 720.110, p. 531; *First Nat. Bank* v. *Kinslow* (1937) 8 Cal.2d 339, 345 [65 P.2d 796]; see *City of Torrance* v. *Castner* (1975) 46 Cal.App.3d 76 [120 Cal.Rptr. 23].)

The third party claim procedures are optional and the third party does not waive a superior interest in the property levied upon by failure to make such a third party claim. (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 720.110, p. 531; legis. com. com.— Assem. foll. § 720.150, p. 539.) This principle is a corollary of the general rule a judgment or levy reaches only the interest of the debtor in the property because a judgment creditor can acquire no greater right in the property levied upon than that of its judgment debtor. (Legis. com. com.—

Assem., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 720.150, p. 539; *Jensen* v. *Hugh Evans & Co.* (1941) 18 Cal.2d 290, 301 [115 P.2d 471].)

    b. *Enterprises's sublessee third party claim properly was denied because Regency was not seeking to deprive Enterprises of its interest in the property.*

    ▇ As indicated, Regency's notice of levy stated the property to be levied upon was Lanes's "leasehold interest" in the property at 5601 West Century Boulevard.

    ▇ Generally, the distinguishing characteristic of a leasehold estate is that the lease gives the lessee the exclusive possession of the premises against all the world, including the owner. (*Howard* v. *County of Amador* (1990) 220 Cal.App.3d 962, 972 [269 Cal.Rptr. 807].) A *sublease* conveys an interest less than the leasehold with a reversion to the sublessor. (*Chase* v. *Trimble* (1945) 69 Cal.App.2d 44, 50 [158 P.2d 247].) ▇ Here, Lanes's leasehold interest in the property was encumbered by the sublease to Enterprises.

    However, the notice of levy simply described the property to be levied upon as Lanes's "leasehold interest" in the property at 5601 West Century Boulevard. The notice made no mention of the existence of the sublease by Lanes to Enterprises. Accordingly, Enterprises was entitled, in an abundance of caution, to bring a third party claim to assert its interest in the property. (§ 720.110, subd. (a).)

    Nonetheless, in view of Regency's position with respect to Enterprises's sublessee interest, the trial court properly denied the third party claim. Regency concedes it "is not seeking to deprive [the sublessee] of the right of possession of the subleased property (provided [the sublessee] fully complies with all terms of the sublease) or to possession of any of the personal property located on the leased premises." (Italics deleted.) The execution sale "would permit the purchaser to step into the shoes of [the sublessor], not [the sublessee]." (Italics deleted.)

    Consequently, because Regency is not disputing Enterprises's superior right to possession of the property pursuant to the sublease, the trial court in its final order properly denied Enterprises' third party claim. However, the trial court should have made a formal determination the third party claim was being denied on the ground Regency claims no portion of the sublessee leasehold interest claimed by Enterprises, and the order shall be modified to so provide.

2. *Trial court properly denied Lanes's judgment debtor motion to vacate and quash the writ of execution.*

a. *Lanes has no standing to complain of ASD's lack of consent to a purchaser of Lanes's leasehold interest.*

Lanes contends without ASD's written consent to the levy as required by the master lease, Regency could not obtain a writ of execution against Lanes's leasehold interest to satisfy the judgment.

The statute invoked by Lanes, section 695.035, states in relevant part: "(a) A lessee's interest in real property may be applied to the satisfaction of a money judgment in any of the following circumstances: [¶] (1) If the lessee has the right voluntarily to sublet the property or assign the interest in the lease. [¶] (2) If the lessee has the right voluntarily to sublet the property or assign the interest in the lease subject to standards or conditions and the purchaser at the execution sale or other assignee agrees to comply with the standards or conditions that would have had to be complied with had the lessee voluntarily sublet the property or assigned the interest in the lease. [¶] (3) *If the lessee has the right voluntarily to sublet the property or assign the interest in the lease with the consent of the lessor, in which case the obligation of the lessor to consent to the assignment is subject to the same standard that would apply had the lessee voluntarily sublet the property or assigned the interest in the lease.* [¶] (4) In any other case, if the lessor consents in writing." (Italics added.)

Because the master lease does not set forth any standards or conditions and simply permits Lanes to enter into a sublease with the lessor's consent, subdivision (a)(3) of section 695.035 arguably would be applicable. Therefore, ASD's obligation to consent to the transfer would be subject to the same standard that would apply had Lanes voluntarily sublet the property or assigned the interest in the lease. (See Civ. Code, §§ 1995.260, 1995.270; *Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 506-507 [220 Cal.Rptr. 818, 709 P.2d 837].)

However, it would appear the consent provisions of section 695.035 are intended to protect not the judgment debtor lessee but the *lessor*, such as ASD, which did not bargain for a stranger being interposed into the lessor/lessee relationship. This concern is reflected in the legislative committee comment following the statute, which advises that "[a] potential purchaser at an execution or other sale of the judgment debtor's leasehold interest would be wise to negotiate with the lessor before the sale to avoid disputes that might otherwise arise after the sale." (Legis. com. com.—Assem., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 695.035, p. 147.)

Because the consent provisions of section 695.035 are not for the lessee's benefit, Lanes lacks standing to argue Regency had not procured ASD's consent to a potential purchaser of Lanes's leasehold interest.

*Hoffman* v. *Citadel General Assurance, Ltd.* (1987) 194 Cal.App.3d 1356 [240 Cal.Rptr. 253] is analogous. There, an insured who purchased a policy of insurance received a notice of cancellation for nonpayment of the premium from the bank which financed the policy. (*Id.,* at pp. 1358-1359.) The bank did not, however, mail notice of cancellation to the insurer. (*Id.,* at p. 1362.) The insured contended because the bank never mailed the required notice to the insurer, the cancellation was ineffective. (*Ibid.*) The argument was rejected. *Hoffman* reasoned notice to the insurer was for the insurer's, not the insured's, benefit. Therefore, the insured could not raise a lack of notice to the insurer. (*Id.,* at p. 1363.)

Similarly here, because the consent provision of section 695.035, subdivision (a)(3), is for the benefit of ASD rather than Lanes, Lanes cannot complain of a lack of consent by ASD. The issue of ASD's consent, or lack thereof, was not relevant on Lanes's motion to recall and quash the writ of execution because it lies with ASD, not Lanes.[5]

b.   *Trial court's rationale erroneous but harmless.*

As indicated, the trial court denied Lane's motion to vacate and quash the writ of execution on the ground section 695.035 was inapplicable because the levy was on a *sublessor's* interest. However, that raises a distinction without a difference. Section 695.035 sets forth the circumstances in which "[a] *lessee*'s interest in real property may be applied to the satisfaction of a money judgment . . . ." (§ 695.035, subd. (a), italics added.) Lanes, the judgment debtor, is a *lessee* under the master lease. The mere fact that Lanes also happens to be a sublessor does not render the statute inapplicable. Nonetheless, the trial court's decision is correct in result (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]) because, as discussed above, Lanes lacks standing to complain of a lack of consent by ASD to a purchaser of Lanes's leasehold interest.

---

[5]On the issue of consent, Lanes also contends it was determined on a prior appeal that the master lease prohibits Lanes from subletting or assigning the premises without its landlord's consent and that determination is law of the case for interpreting the lease. The argument is devoid of merit. The lease requirement that Lanes obtain ASD's consent before voluntarily subletting or assigning the premises has no bearing on whether Lanes may assert ASD's lack of consent to forestall an involuntary execution sale of Lanes's leasehold interest.

c. *Additional issues not reached.*

To the extent Lanes raised new arguments either in its reply papers below or in its reply brief on appeal, we do not reach them. (See *Tisher* v. *California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361 [282 Cal.Rptr. 330].) The only ground raised by Lanes in its *moving* papers below on the motion to vacate and quash the writ of execution was that Lanes did not have the right to sublet or assign the lease without the lessor's consent. Consequently, Lanes's additional arguments with respect to the adequacy of the notice of levy and any other issues were not properly presented to the trial court and hence are not properly before this court.

DISPOSITION

The order denying Lanes's motion to recall and quash the writ of execution is affirmed.

The order denying Enterprises's third party claim is modified to provide the third party claim is denied on the ground Regency claims no portion of the sublessee leasehold interest claimed by Enterprises, and as modified is affirmed.

Regency to recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

A petition for a rehearing was denied February 16, 1995.